PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FRANK NOLTE; HELEN NOLTE; LOCAL
144 NURSING HOME PENSION FUND,
*Plaintiffs-Appellants,*

and

BILL BROOKS; CHARLES BRUENER;
CHARLES BRYANT; JAMES B. HOWARD;
AMIR NASRABADI; ROBERT NORMAN;
DAVID ONERHEIM; JACK B. PIERCE;
KUNMING QIAN; BERNARD STERN;
RAYMOND TYLER; LISA YANKOFSKY,
*Plaintiffs,*

v.

CAPITAL ONE FINANCIAL
CORPORATION; RICHARD D. FAIRBANK;
NIGEL W. MORRIS; DAVID M.
WILLEY; PETER A. SCHNALL,
*Defendants-Appellees.*

No. 03-1612

EMILE WANICH; RHODA WANICH; THE
CHARLES H. WALSH, SR. TRUST,
*Movants.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-02-1069-A)

Argued: February 25, 2004

Decided: December 2, 2004

Before WIDENER and DUNCAN, Circuit Judges,
and William D. QUARLES, Jr., United States District Judge for the
District of Maryland, sitting by designation.

---

Affirmed by published opinion. Judge Quarles wrote the opinion, in which Judge Widener and Judge Duncan concurred.

---

## COUNSEL

**ARGUED:** Melvyn I. Weiss, MILBERG, WEISS, BERSHAD, HYNES & LERACH, New York, New York, for Appellants. Jordan D. Eth, MORRISON & FOERSTER, San Francisco, California, for Appellees. **ON BRIEF:** Lee A. Weiss, MILBERG, WEISS, BERSHAD, HYNES & LERACH, New York, New York; Steven J. Toll, Daniel S. Sommers, COHEN, MILSTEIN, HAUSFELD & TOLL, Washington, D.C.; Daniel W. Krasner, Gregory M. Nespole, Stacy T. Kelly, WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ, New York, New York, for Appellants. Melvin R. Goldman, Erik J. Olson, Mia Mazza, MORRISON & FOERSTER, San Francisco, California; Laurie A. Hand, MORRISON & FOERSTER, McLean, Virginia; James A. Murphy, LECLAIR RYAN, P.C., Richmond, Virginia, for Appellees.

---

## OPINION

QUARLES, District Judge:

Shareholders appealed the district court's dismissal of their securities fraud action for failure to plead fraud with particularity. Finding no error, we will affirm.

### I.

On July 19, 2002, in the Eastern District of Virginia, Robert Norman filed a Class Action Complaint in which he alleged violations of

the Securities Exchange Act of 1934 (the "Exchange Act") against Appellee Capital One Financial Corporation ("Capital One") and certain of its officers and executives. On October 1, 2002, the district court consolidated the *Norman* case with 11 other pending cases in which similar claims had been brought.

On October 17, 2002, the Appellants filed a Consolidated and Amended Complaint in which they alleged violations of Section 10(b) and Rule 10b-5 of the Exchange Act against Capital One and its Chief Executive Officer, Chief Operating Officers and Chief Financial Officer as individual defendants in Count I and a violation of Section 20(a) of the Exchange Act against the individual defendants in Count II. In that pleading, the Appellants alleged that during the class period Capital One maintained insufficient loan loss reserves and capital in violation of banking guidelines, but represented to the public that it was holding an appropriate amount of capital. The complaint cited information from several former Capital One employees that it was internally known at Capital One that the loan loss reserves were deficient, and banking regulators had begun investigating these deficiencies during the class period. The Appellants also alleged that during the class period, Capital One consistently portrayed its proprietary information based strategy ("IBS") system as providing Capital One with a competitive advantage, even though serious deficiencies in the system were known to former employees.

Appellants alleged that in various Securities and Exchange Commission ("SEC") filings, Capital One made materially false and misleading statements about the adequacy of its loan loss reserves and IBS system. The appellants further alleged that the failure to disclose material facts artificially inflated the price of Capital One securities; when Capital One released a statement changing its financial forecast and reporting that it was entering into a Memorandum of Understanding with regulators, the Appellant shareholders suffered a financial loss.

On December 4, 2002, the district court granted the Appellees' motion to dismiss and gave the Appellants 14 days in which to file an amended complaint. On December 23, 2002, the Appellants filed a Second Consolidated and Amended Class Action Complaint. While the Appellees' motion to dismiss was under consideration by the dis-

trict court, Appellants moved for leave to amend and supplement the second consolidated and amended complaint.

In their amended pleading, the Appellants alleged that Capital One had maintained insufficient loan loss reserves and capital in violation of banking guidelines, while it represented to the public that it was holding an appropriate amount of capital. Appellants cited the testimony of several confidential witnesses who worked for Capital One and asserted that concerns about Capital One's capitalization had arisen within management while the company was still reporting that it believed it was adequately capitalized. The Appellants also alleged that employees were told not to cooperate with federal bank regulatory investigations during the class period. Appellants alleged that Capital One's undercapitalization was shown by a July 16, 2002 SEC announcement that the Appellees had entered into a Memorandum of Understanding with Federal Banking Regulators to address, among other things, Capital One's capitalization, loan loss allowances, and deficiencies in Capital One's infrastructure.

The Appellants also alleged that Capital One consistently portrayed its IBS system as providing a competitive advantage, even though there were serious deficiencies in the system. In support of this allegation, Appellants cited information from confidential witnesses about instances when the system was demonstrably ineffective. Appellants also relied upon the July 16, 2002 SEC filing in which Appellees acknowledged serious deficiencies in Capital One's infrastructure and technology.

Appellants also bolstered their assertions by noting that the individual defendants had sold their Capital One stock during the class period.

Appellants alleged that materially false and misleading statements in various SEC filings and the failure to disclose material facts artificially inflated the price of Capital One securities; when Capital One released a statement changing its financial forecast and reporting that it was entering into the Memorandum of Understanding with regulators, the Appellant shareholders suffered a financial loss.

On April 10, 2003, the district court granted the Appellees' motion to dismiss the Second Consolidated and Amended Class Action Com-

plaint on the basis that the Appellants had failed to adequately plead either falsity or scienter. This appeal followed.

## II.

The court reviews the dismissal of claims pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo*. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III.

To establish liability under § 10(b) and Rule 10b-5, plaintiffs must demonstrate that: (1) the defendants made a false statement or omission of material fact; (2) with scienter; (3) upon which the plaintiffs justifiably relied; (4) that proximately caused the plaintiffs' damages. *Hillson Partners Ltd. Partnership v. Adage, Inc.*, 42 F.3d 204, 208 (4th Cir. 1994). Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the complaint must aver "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (2004). The complaint must also allege facts giving rise to a strong inference that the defendant acted with scienter. § 78u-4(b)(2).

To allege a false statement or omission of material fact, "plaintiffs must point to a factual statement or omission—that is, one that is demonstrable as being true or false." *Longman v. Food Lion, Inc.*, 197 F.3d 675, 682 (4th Cir. 1999). To form the basis of a cause of action, the statement must be false, or the omission must render public statements misleading. *Id.* (citing 17 C.F.R. § 240.10b-5).

The false statement or omission must be material. The question of materiality is an objective one, which examines the significance of an omitted or misrepresented fact to a reasonable investor. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976). A fact is material if there is a substantial likelihood that it would have assumed actual significance in the deliberations of a reasonable investor; that

is, the disclosure of the omitted statement or revelation of the true circumstances would have been viewed by the reasonable investor as having significantly altered the "total mix" of available information. *Id.* at 449.

The shareholders allege that Capital One's management lied to investors when it opined that Capital One maintained sufficient capital and loan loss reserves, and that the company's success was due in part to its unique computer infrastructure.

In *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1093 (1991), the Supreme Court held that in a securities fraud case, a statement of opinion may be a false factual statement if the statement is false, disbelieved by its maker, and related to matters of fact which can be verified by objective evidence. *Longman*, 197 F.3d at 683 (citing *Virginia Bankshares*, 501 U.S. at 1093).

In order to plead that an opinion is a false factual statement under *Virginia Bankshares*, the complaint must allege that the opinion expressed was different from the opinion actually held by the speaker. *Virginia Bankshares*, 501 U.S. at 1093.

The shareholders claim that Peter Schnall, a member of Capital One's management team, fearing that Federal Regulators would determine that Capital One was undercapitalized, instructed employees not to cooperate with Federal Regulators. That Schnall allegedly feared that Capital One would be *deemed* undercapitalized, however, does not mean that he believed the company actually *was* undercapitalized.

Moreover, Schnall was not alleged to have made any public statements about Capital One. Therefore, as the district court explained, for the shareholders to assert that Schnall's behavior indicated that management disbelieved its positive public remarks about Capital One's capitalization, the shareholders would have needed to have alleged that: (1) Schnall believed Capital One was undercapitalized; (2) Schnall informed other managers of his opinion; and (3) those managers adopted his opinion but then publicly declared that Capital One was maintaining sufficient capital. The complaint is devoid of such allegations.

The complaint also fails to allege that Capital One's management disbelieved its public statements about the strength of the company's computer system. The shareholders claim that unnamed former Capital One employees believed that the system was incapable of meeting the demands of the company's rapid growth and that Federal Regulators were concerned about its performance. The shareholders do not allege, however, that management was ever informed of these concerns or that they had any other reason to doubt the system's reliability.

Even if the complaint had alleged that Capital One's management disbelieved its public remarks about the state of the company, the complaint must be dismissed because it fails to plead falsity with requisite particularity. The shareholders assert that Federal Regulators would not have required Capital One to enter into a Memorandum of Understanding calling for increased capital and computer system enhancement unless Capital One had been undercapitalized and using a substandard computer infrastructure during the class period. But the Memorandum of Understanding between Federal Regulators and Capital One required Capital One to make *prospective* changes to its business. Had Federal Regulators determined that Capital One's *past* practices were deficient, they could have applied corrective measures retroactively and forced the company to restate its earnings to reflect retroactive adjustments. *See* 12 U.S.C. § 1818(b) (2004) (empowering Federal Regulators to take affirmative action to correct conditions resulting from any banking violation or unsound practice). The fact that Federal Regulators require a company to change the way it does business in the future does not show, as a forced restatement of earnings could, that the business violated federal guidelines in the past.

Relying on the same factual allegations, the shareholders claim that Capital One omitted from its financial statements disclosures required by Generally Accepted Accounting Principles ("GAAP") about its potential liabilities, including the size of its subprime portfolio, that it was under investigation by Federal Regulators, and that its computer system could not keep pace with its rapid growth.

Although GAAP require disclosure of significant risks and uncertainties, "[t]he disclosure requirements do not encompass risks and uncertainties that might be associated with management or key

personnel, proposed changes in government regulations, proposed changes in accounting principles, or deficiencies in the internal control structure." American Institute of Certified Public Accountants, Statement of Position No. 94-6 § .04 (1994). The alleged investigation by Federal Regulators and problems with the computer infrastructure plainly fall within these exceptions.

Moreover, subprime lenders are discouraged from publicly reporting the size of their subprime portfolios because "there is no standard industry-wide approach to the definitions of either 'subprime' or 'program,' which means that the meanings of these terms are institution-specific. Thus, the reported information will not be entirely comparable from one institution to the next, leading to potential misinterpretation of the data by the public." Proposed Agency Information Collection Activities; Comment Request, 67 Fed. Reg. 46,250, 46,253 (July 12, 2002).

Because we find that the shareholders failed to plead falsity with particularity as required by the PSLRA, it is unnecessary to determine whether they adequately alleged scienter.

IV.

While its motion to dismiss was pending, Capital One announced that a Defendant in this case, David M. Willey, its Chief Financial Officer and Executive Vice President, was resigning from the company because he had received notice that the SEC was likely to file a civil action against him for insider trading. The SEC had been investigating stock trades that Willey had made in 2002 to determine whether they were based on material non-public information regarding Capital One's negotiations with Federal Regulators. The shareholders moved for leave to amend the complaint to allege that Willey sold his stock in Capital One before the Memorandum of Understanding was announced because he believed that the stocks' value would plummet after the announcement. The district court denied the motion for leave to amend.

We review the district court's denial of leave to amend the complaint for an abuse of discretion. *HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001).

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Leave to amend should be denied, therefore, "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)) (internal quotation marks omitted).

The fact that Willey allegedly believed Capital One's stock value would drop when the Memorandum of Understanding was announced does not lead to the conclusion that Willey thought Capital One was undercapitalized. Nor does it show that Willey, or anyone else in Capital One's management for that matter, believed that Capital One held insufficient loan loss reserves or lacked adequate technology. Because the proposed amendment would not have cured the deficiencies of the complaint, it would have been futile for the shareholders to have amended it. Accordingly, the district court did not abuse its discretion in denying leave to amend.*

---

*While this appeal was pending, the SEC commenced a civil action against Willey in the United States District Court for the District of Columbia. The shareholders have asked the Court to take judicial notice of the complaint and the facts alleged therein.

Only indisputable facts are susceptible to judicial notice. FED. R. EVID. 201(b) (2004); *see also*, *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003); *United States v. Burch*, 169 F.3d 666, 672 (10th Cir. 1999); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831-32 (5th Cir. 1998); *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A.*, 146 F.3d 66, 70-71 (2d Cir. 1998). Although the filing of an SEC complaint against Willey is indisputable, the facts alleged therein are not. A court cannot take notice of (and so assume the truth of) mere allegations that Capital One or its management made false statements or omissions during the class period. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (appropriate to take judicial notice of facts that are "relevant and critical to the matter on appeal"). We express no opinion about the merits of the SEC pleading.

## V.

For the reasons discussed above, the district court's dismissal of the shareholders' case and denial of their motion for leave to amend the complaint is

*AFFIRMED*.