Gregg KIKEN, et al., Individually and on behalf of all others similarly situated, Plaintiffs,

v.

LUMBER LIQUIDATORS HOLDINGS, INC., et al., Defendants.

Civil Action No. 4:13cv157

United States District Court, E.D. Virginia, Newport News Division.

Signed December 21, 2015

David R. Stickney, Brett M. Middleton, Bernstein, Litowitz, Berger & Grossmann LLP, San Diego, CA, Avi Josefson, Gerald Harlan Silk, Jai Kamal Chandrasekhar, Bernstein, Litowitz, Berger & Grossmann, LLP, New York, NY, Jeremy A. Lieberman, Michael Jonathan Wernke, Pomerantz, Grossman, Hufford, Dahlstrom & Gross, LLP New York, NY, Elizabeth Anne Aniskevich, Steven Jeffrey Toll, Cohen, Milstein, Sellers & Toll, PLLC, Washington, DC, Susan Rebecca Podolsky, The Law Offices of Susan R. Podolsky, Alexandria, VA, for Plaintiffs.

Lyle Roberts, George Edward Anhang, Kyle Patrick Reynolds, Cooley LLP, Connie Nora Bertram, Ann Marie Ashton, Ralph Carmine Ferrara, Proskauer Rose LLP, Ada Fernandez Johnson, Jonathan Rosser Tuttle, Debevoise & Plimpton LLP, Elizabeth Clay Solander, John Frederick Wood, Kevin Tod Abikoff, Sean Michael Reilly, Hughes Hubbard & Reed LLP, Washington, DC, Jonathan Paul Bach, Cooley LLP, Jonathan Elliot Richman, Proskauer Rose LLP for Defendants.

### ORDER

Arenda L. Wright Allen, United States District Judge

Before the Court is a Motion to Dismiss for failure to state a claim (ECF No. 82).

filed by Defendants Lumber Liquidators Holdings, Inc. ("Lumber Liquidators"), Robert M. Lynch, Daniel E. Terrell, William K Schlegel and Thomas D. Sullivan (collectively, "Defendants"). Defendant William Schlegel also filed a supplemental memorandum in support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Complaint as it pertains to him. For the following reasons, Defendants' Motion to Dismiss is **DENIED**.

### I. FACTUAL BACKGROUND

David Lorenzo, Gregg Kiken, Keith Foster, and Charles Hickman ("Plaintiffs") are the Lead Plaintiffs in this securities class action. Plaintiffs bring this class action against Lumber Liquidators Holdings, Inc. ("Lumber Liquidators") and four of its former officers[1] for violations of §§ 10(b) and 20(a) of the Securities Exchange Act. Lumber Liquidators is a publicly traded company that sells hardwood and laminate flooring. ECF No. 90.

Between February 22, 2012 and February 27, 2015 (the "Class Period"), Lumber Liquidators reported gross margins that were substantially higher than those of its major competitors. Compl. para. 2. Defendants represented that the major driver of these high margins was legitimate "sourcing initiatives" in China that reduced costs. Compl. ¶ 47–53.

Plaintiffs claim that Lumber Liquidators' low product costs and high profit margins were a result of the importation of cheap flooring from China, which was made from illegally harvested wood (in violation of the Lacey Act[2]) and was con-

---

1. The individual defendants are former President and Chief Executive Officer ("CEO") Robert M. Lynch, former Chief Merchandising Officer ("CMO") William Schlegel, former Chief Financial Officer ("CEO") Daniel Terrell, and founder and Chairman Thomas Sullivan.

2. The Lacey Act bans the trade of illegally-sourced wood products and requires the exercise of "due care" in identifying illegally-harvested wood. ECF No. 83.

taminated with high levels of formaldehyde (in violation of applicable safety standards[3]). Compl. ¶¶ 120–53. Plaintiffs further contend that Lumber Liquidators' stock price plunged by sixty-eight percent following a series of events and disclosures regarding the alleged Lacey Act and CARB violations. ECF No. 90. After these disclosures, the sale of Chinese laminate products was suspended, and Lynch, Schlegel, and Terrell resigned. *Id.*

The Consolidated Amended Complaint ("Complaint") alleges that the following misrepresentations were made by Lumber Liquidators and the individual defendants. First, the Complaint alleges that Defendants represented falsely that Lumber Liquidators achieved its high margin growth and earnings through legitimate "sourcing initiatives," when the reported results were allegedly the result of the importation of cheap products that used illegally-harvested wood and contained high levels of formaldehyde, in violation of the Lacey Act and CARB standards. Second, the Complaint alleges that Defendants represented falsely that their products met "high quality standards," when the products allegedly suffered from formaldehyde contamination. Third, the Complaint alleges that Defendants falsely represented compliance with laws and internal standards, when Defendants failed to comply with the law or adequately control for such compliance. Fourth, the Complaint alleges that Defendants Lynch and Terrell assured investors that margin growth would continue even though the network of suppliers was deficient. ECF No. 90.

Plaintiffs also bring claims against each individual defendant under § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), which provides for secondary liability for "control persons," or those who exercised control over another person or entity that violated securities laws. Compl. para. 92–97. A "Section 20(a) claim will stand or fall based on the court's decision regarding the [predicate] Section 10(b) claim." *Plymouth Cnty. Ret. Ass'n v. Primo Water Corp.*, 966 F.Supp.2d 525, 552–53 (M.D.N.C.2013).

## II. PROCEDURAL BACKGROUND

Defendants filed the pending Motion to Dismiss the Consolidated Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have failed to provide any facts to support their assertion that Defendants knowingly engaged in a fraudulent scheme to import illegal or hazardous wood products to inflate their profit margins, and then subsequently hid the scheme from investors, in violation of § 10(b) of the Securities Exchange Act. ECF No. 83. Defendants further argue that the Complaint fails to allege that Defendants made false or misleading statements about regulatory compliance programs or historical financial performance, and fails to sufficiently allege loss causation and scienter. *Id.*

Plaintiffs respond that Defendants have mischaracterized the Complaint by ignoring allegations establishing that Defendants' statements were materially false and misleading, made with scienter, and responsible for losses to shareholders. ECF No. 90.

Defendant William Schlegel has also filed a Supplemental Memorandum in Sup-

---

**3.** The California Air Resources Board ("CARB") promulgates regulations regarding formaldehyde emissions from wood products. One such regulation, the Airborne Toxic Control Measure ("ACTM"), limits the amount of formaldehyde that can be emitted from wood products sold in California. ECF No. 83.

port of Defendants' Motion to Dismiss, arguing that Plaintiffs' claim of securities fraud under § 20(a) of the Securities Exchange Act should be dismissed with prejudice for failure to state a claim against him. Mr. Schegel argues that Plaintiffs have failed to establish a *prima facie* case of "control person liability" as required by § 20(a). ECF No. 118.

Plaintiffs respond that Mr. Schlegel, as CMO, was one of the corporate officers empowered to "directly or indirectly control or influence" the allegedly illegal practices attributed to Lumber Liquidators. ECF No. 124. Given Lumber Liquidators' allegedly fraudulent activity, and Mr. Schlegel's ability to control this activity, Plaintiffs argue that the pleading requirements for § 20(a) are satisfied pertaining to Mr. Schlegel. *Id.*

### III. STANDARD OF REVIEW

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court should dismiss a complaint if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir.2008). The facts alleged must be sufficient "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

In evaluating the complaint, the Court will "construe the factual allegations 'in the light most favorable to the plaintiff.'" *Smith v. Smith,* 589 F.3d 736, 738 (4th Cir.2009) (citations omitted). "We must assume all [well-pled facts] to be true." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009) (alteration in original) (internal quotation mark omitted). "[B]ut we need not accept the legal conclusions drawn from the facts, and we need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Id.* (alteration in original). Additionally, a threadbare recitation of the "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *See id.* at 255; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (noting that "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Federal Rule of Civil Procedure 8(a)(2) requires only that a claimant make "a short and plain statement of the claim showing that the pleader is entitled to relief." *Masco Contractor Servs. E., Inc. v. Beals,* 279 F.Supp.2d 699, 703 (E.D.Va. 2003).

For claims of fraud, Rule 9(b) imposes a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). To satisfy this heightened pleading standard, a plaintiff must state with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *In re Mut. Funds Inv. Litig.,* 566 F.3d 111, 120 (4th Cir.2009) (internal quotations omitted)

For claims of securities fraud, a plaintiff must also satisfy the pleading requirements imposed by the Private Securities Litigation Reform Act ("PLSRA"). *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs*, 432 F.Supp.2d 571, 578 (E.D.Va.2006). The PLSRA requires a plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omissions is made on information and belief, ... state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). The PLSRA also requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § 78u–4(b)(2). A plaintiff must "plead facts rendering an inference of scienter at least as likely as any plausible opposing inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 328, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

### IV. LEGAL PRINCIPLES

*A. "Rule 10b–5 Claim;" § 10(b) of the Securities Exchange Act (15 U.S.C. § 78j(b))*

■ Plaintiffs' principal claim arises under § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b–5, 17 C.F.R. § 240.10b–5 (a "rule 10b–5 claim"). Compl. ¶ 162. To state a Rule 10b–5 claim, a plaintiff must establish: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008).

■ With respect to the first element, material misrepresentation or omission, the complaint must plead "*sufficient facts* to support a *reasonable belief* in the allegation that a defendant's statement was misleading." *Carlucci v. Han*, 907 F.Supp.2d 709, 727 (E.D.Va.2012). As a general rule, the trier of fact decides whether a public statement is misleading. *In re STEC Inc. Sec. Litig.*, No. CV09–08536, 2011 WL 2669217, at *9 (C.D.Cal. June 17, 2011). It "is not necessary for Plaintiff to prove absolute, incontrovertible falsity at the motion to dismiss stage." *Carlucci*, 907 F.Supp.2d at 727. A plaintiff is only required to "allege facts and circumstances that, drawing reasonable inferences in their favor, would render their claims [of falsity] plausible" and "[is] not required to prove the falsity of the alleged misrepresentations at the pleading stage." *Nieman v. Duke Energy Corp.*, No. 3:12CV456, 2013 WL 4004274, at *8 (W.D.N.C. July 26, 2013). The complaint must also satisfy Federal Rule of Civil Procedure 9(b) and the PLSRA by identifying "the time, place, speaker and contents of the allegedly false statement." *In re Genworth Fin. Inc. Sec. Litig.*, 103 F.Supp.3d 759, 770–71 (E.D.Va.2015).

■ Regarding the second element, scienter, the complaint must set forth "facts that constitute circumstantial evidence of either reckless or conscious behavior, and the adequacy of the scienter allegations is to be measured by the facts collectively alleged in the complaint." *Genworth*, 103 F.Supp.3d at 783, (internal quotations omitted). "[T]he question for the Court is whether the allegations in the complaint, viewed in their totality and in light of all of the evidence in the record, allows [the Court] to draw a strong inference, at least as compelling as any oppos-

ing inference, that Defendants knowingly or at least recklessly defrauded investors by way of the alleged misstatements." *Epstein v. World Acceptance Corp.*, No. 6:14CV01606, 2015 WL 2365701, at *7 (D.S.C. May 18, 2015) (internal quotations omitted). "A complaint will not be dismissed so long as the malicious inference is at least as compelling as any opposing innocent inference." *Zak v. Chelsea Therapeutics, Int'l Ltd.*, 780 F.3d 597, 606 (4th Cir.2015) (internal quotations omitted).

With respect to the element of loss causation, a defendant's material misrepresentation or omission must be the cause of a plaintiff's loss for which damages are sought. *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 465 (4th Cir. 2011). A plaintiff must plead with specificity that a "direct relationship" exists between the alleged fraudulent conduct and the alleged loss. *Id.* at 472. To do this, a plaintiff must show that the misrepresentation or omission was "one substantial cause of the investment's decline in value ... [but] need not conclusively show that the securities' decline in value is attributable solely to the alleged fraud rather than to other intervening factors." *In re Mut. Funds Inv. Litig.*, 566 F.3d at 128.

A plaintiff may plead loss causation by alleging either that: (1) corrective disclosure informed the market of fraud and the market reacted negatively; or (2) the risk concealed from investors materialized and caused a foreseeable loss. *In re Francesca's Holdings Corp. Securities Litig.*, Nos. 13CV6882, 13CV7804, 2015 WL 1600464, at *18 (S.D.N.Y. Mar. 31, 2015). Under a corrective disclosure theory, a plaintiff may demonstrate that the "truth gradually emerged through a series of partial disclosures." *Katyle*, 637 F.3d at 472. The plaintiff must also allege that these partial disclosures revealed "new facts suggesting [that the defendant] had

perpetrated a fraud on the market." *Id.* at 473.

## B. "Control Person Claim;" § 20(a) of the Securities Exchange Act

To successfully plead a *prima facie* case of "control person liability" under § 20(a), a plaintiff must allege: (1) the existence of a primary securities violation committed by the "controlled" person or actor (underlying predicate securities violation); and (2) the defendant's "control" over the primary violator. *In re Mut. Funds Inv. Litig.*, 566 F.3d at 129–30. The United States Court of Appeals for the Fourth Circuit has determined that a plaintiff is not required to allege "culpable participation" as an element of the *prima facie* case for "control person liability." *See id.* (*rev'd on other grounds, Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011)). This Court has followed the Fourth Circuit's analysis regarding the "culpable participation" element. *Masterson v. Commonwealth Bankshares, Inc.*, 2 F.Supp.3d 824 (E.D.Va.2014).

Regarding the second element, the SEC defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b–2. To adequately plead "control," a plaintiff must allege that the defendant had the power to control both the general affairs of the entity primarily liable for the predicate securities violation, and the power to directly or indirectly control or influence the specific corporate policy that resulted in the predicate securities violation. *In re Mut. Funds Inv. Litig.*, 566 F.3d at 130 (internal citations omitted). "In making the determination of whether a defendant possessed the requi-

site control, the courts have given heavy consideration to the power or *potential power* to influence and control the activities of a person, *as opposed to the actual exercise* thereof." *Id.* (internal quotations omitted) (emphasis added).

Assessing "control person liability" is a complex factual question that is not ordinarily subject to resolution on a motion to dismiss. *Id.* at 129. Courts adopt a liberal construction whereby dismissal is granted only when a plaintiff cannot plead any facts from which it can be reasonably inferred that the defendant was a "control person." *Id.* Section 20(a) "does not require that the control person act with scienter ... [or] be directly liable for fraud." *Masterson*, 2 F.Supp.3d at 831 n.4 (internal quotations omitted). In pleading the element of "control," a heightened pleading standard is inapplicable, and a plaintiff need only satisfy Rule 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief. *Id.*

## V. DISCUSSION

A. *"Rule 10b–5 Claim;" § 10(b) of the Securities Exchange Act (15 U.S.C. § 78j(b))*

(i) *Material Misrepresentation or Omission*

Plaintiffs' Complaint alleges that Defendants made several material misrepresentations that ultimately caused the decline in stock price. First, the Complaint alleges that Lumber Liquidators misrepresented that the growth in its margins was achieved by legitimate "sourcing initiatives," when in reality the lower costs were attributable to the importation of cheap products that contained formaldehyde and were harvested illegally. Compl. ¶¶ 47–53, 120–53. Second, the Complaint alleges that Defendants misrepresented product

quality. Plaintiffs cite 10–K Forms from 2011 and 2012 and statements made by Defendant Lynch that misrepresent the quality of Lumber Liquidators' products and fail to disclose the alleged regulatory violations that Lumber Liquidators had committed. Compl. ¶¶ 167, 196, 213, 223, 275. Third, the Complaint alleges that Defendants made several misstatements and omissions regarding compliance. Fourth, Plaintiffs allege that Defendants misrepresented their inventory and supply capabilities by assuring continued margin growth. Plaintiffs further contend that Defendants have admitted their statements to be false and misleading in this regard. ECF No. 90.

Defendants contend that their failure to disclose the alleged regulatory violations does not make their statements about Lumber Liquidators' compliance and financial performance false. ECF Nos. 83 and 120. Defendants argue that their statements regarding compliance were statements of opinion, which are "false" only if disbelieved by their maker or if they are related to facts verified by objective evidence. *Nolte v. Capital One Financial Corp.*, 390 F.3d 311, 315 (4th Cir. 2004). Regarding their financial statements, Defendants contend that they are liable under § 10(b) only if such statements were inaccurate or reported income that they did not receive. *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F.Supp.2d 571, 593 (E.D.Va.2006). Defendants further contend that Rule 9(b) requires particularized allegations of the net effect that their allegedly fraudulent statements had on the company's earnings. *In re Daou Systems, Inc.*, 411 F.3d 1006, 1016–18 (9th Cir.2005).

Viewing the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have pled sufficient facts to permit a reasonable belief that Defendants

made materially false and/or misleading statements. *See Genworth*, 103 F.Supp.3d at 772–73.

First, according to the Complaint, Defendants stated repeatedly that their increases in gross margin were attributed to Lumber Liquidators' "sourcing initiatives" in China. Compl. ¶¶ 164, 181, 188, 200, 210, 258, 314. Plaintiffs further allege that Defendants suggested falsely that these sourcing initiatives were legitimate by stating that they participated in "competitive line reviews" and "establish[ed] direct relationships" in order to "control product cost and quality." Compl. ¶¶ 192, 215, 265. The Complaint also alleges that Lumber Liquidators' margins increased from around thirty-five percent in 2011 to an "astounding 41.8% by the third quarter of 2013" due to allegedly illegal sourcing practices in China. Compl. ¶¶ 9, 11, 249. This allegation contradicts Defendants' argument that Plaintiffs failed to specifically allege the net effect of the company's allegedly illegal practices on the company's earnings. Although Defendants may have been unaware of the alleged violations at the time these statements were made, Plaintiffs have pled sufficiently that these public statements were rendered materially false by Defendants' failure to disclose the alleged violations upon their discovery. *See Longman v. Food Lion, Inc.*, 197 F.3d 675, 682 (4th Cir.1999).

Second, the Complaint alleges that Defendants stated that they "work[ed] directly with [their] supplier mills to source and produce flooring that will meet [their] high quality standards." Compl. ¶ 167. Plaintiffs argue that this statement is misleading in light of the alleged regulatory violations that were later uncovered. ECF No. 90. Failure to disclose negative information about the products at issue can create a "misleading impression" to investors about the success of the company. *See In*

*re Computer Sciences Corp. Sec. Litig.*, 890 F.Supp.2d 650, 690 (E.D.Va.2012). Plaintiffs allege that Defendants failed to disclose the high probability of regulatory violations or the existence of such violations after they were discovered. ECF No. 90.

Third, Plaintiffs allege that Defendants misrepresented the true nature of their compliance procedures by stating on several occasions that they worked closely with suppliers, performed additional testing, and set "more stringent internal quality standards" to ensure compliance. ECF No. 90. According to the Complaint, Defendants stated that they "discontinue sourcing from suppliers not adhering to [their] standards" (Compl.¶¶ 273, 318), that they have "policies and procedures in place for the sourcing, harvesting, and manufacturing of its products designed to comply with federal and other regulations related to the importation of wood flooring products" (Compl.¶ 247), and that they "offer[ ] brands that practice responsible harvesting" (Compl.¶ 179). They further stated that "[f]looring mills must submit harvesting plans to the local government for approval." *Id.* According to Plaintiffs, these statements were false and misleading given the allegations of illegal activity that surfaced concerning Lumber Liquidators' sourcing practices in China. ECF No. 90.

The Court also notes that the Chief Compliance and Sustainability Officer stated that Lumber Liquidators "did not begin building a compliance team in China until December of 2014." Compl. ¶ 344. This admission suggests that Defendants' statements regarding sustainable supply and regulatory compliance were false, at least in reference to their operations in China.

The fourth set of misleading statements alleged by Plaintiffs addresses Defendants' supposed misrepresentation of Lumber Liquidators' inventory and supply capabili-

ties. Plaintiffs allege that Defendants repeatedly assured investors of continued margin growth. Compl. ¶¶ 286, 289. Plaintiffs allege that Defendants later admitted that these assurances were false and misleading because of their lack of diversified suppliers and their inability to provide sufficient inventory in compliance with the Lacey Act and formaldehyde standards. Compl. ¶¶ 290, 294, 300, 307, 309, 311, 313, 315.

Defendants' assurances to investors, which Plaintiffs allege came in several forms, allegedly were either patently false or omitted facts that would have been material to a reasonable investor. *See Genworth,* 103 F.Supp.3d at 778–79. Even if Defendants were unaware of the falsity of their statements at the time they were made, Plaintiffs have alleged sufficiently that Defendants' subsequent discovery of possible regulatory violations rendered their past statements misleading in the absence of correction or clarification. *See Food Lion,* 197 F.3d at 682.[4] Plaintiffs have advanced factual allegations sufficient to create a reasonable belief that Defendants made statements that would have been misleading to a reasonable investor.

*(ii) Scienter*

██ Plaintiffs allege that Defendants had actual knowledge and access to non-public information suggesting that their public statements were false and misleading. ECF No. 90. The Complaint alleges specifically that Defendants were aware of the hazards of importing from China, and that they were put on notice of the alleged regulatory violations, because they were receiving substantially lower prices than their competitors for "core products," the lack of internal controls, and numerous customer complaints about formaldehyde odor. ECF No. 90; Compl. ¶¶ 143–147. Plaintiffs contend that Defendants' awareness, coupled with the ease by which third parties discovered the alleged regulatory violations, establishes that Defendants knew or should have known of the dubious quality of their products. Compl. ¶¶ 109, 126–53, 336. Plaintiffs also allege that Defendants had access to relevant information concerning the alleged regulatory violations because they were personally involved in Lumber Liquidators' operations in China, where regulatory violations allegedly occurred. ECF No. 90. Plaintiffs claim that Defendants assumed direct control of product sourcing in China, and that sourcing directly from China provided "insight and visibility throughout the sourcing process." Compl. ¶ 57.

Plaintiffs also contend that the named individual defendants benefitted directly from the alleged fraud, which also supports a strong inference of scienter. ECF No. 90; *Carlucci,* 907 F.Supp.2d at 729 (finding a strong inference of scienter when a plaintiff sufficiently alleges that a defendant benefitted in a concrete and personal way from the alleged fraud).

Defendants argue that they were unaware of the alleged regulatory violations, and that Plaintiffs have put forth inadequate allegations to infer their knowledge or recklessness concerning the alleged regulatory violations. ECF No. 83. Defendants argue that the Compliant fails because the Complaint cites only "access" allegations. ECF No. 120. According to

---

**4.** Furthermore, the above statements are not statements of opinion because they "do not contain the words 'believe' or 'think,' but instead suggest a greater sense of certainty." *Genworth,* 103 F.Supp.3d at 778–79 (quoting *Omnicare, Inc. v. Laborers Dist. Council* *Const. Industry Pension Fund,* —— U.S. ——, 135 S.Ct. 1318, 1324–26, 191 L.Ed.2d 253 (2015)). Thus, Defendants' argument that Plaintiffs failed to satisfy the *"Omnicare* standard" regarding statements of opinion is unpersuasive.

Defendants, Plaintiffs have inadequately alleged that Defendants knew, or were severely reckless in not knowing, that the Chinese suppliers were engaged in regulatory violations, and must provide direct allegations concerning Defendants' knowledge that go beyond mere assertions that Defendants had access to the information. *See, e.g., Pugh v. Tribune Co.*, 521 F.3d 686, 694 (7th Cir.2008) (finding that scienter is adequately pled when plaintiffs cite specific documents or reliable allegations from confidential witnesses showing knowledge or severe recklessness). Defendants further contend that the individual defendants' stock sales were neither unusual nor suspicious. ECF Nos. 83 and 120.

To prove scienter, "[a] plaintiff must show either intentional misconduct or such severe recklessness that the danger of misleading investors was either known to the defendant or so obvious that the defendant must have been aware of it." *Genworth*, 103 F.Supp.3d at 782(internal quotations omitted). Plaintiffs' allegations must raise a strong inference that Defendants knew or were reckless in disregarding the true facts when making the false or misleading statements. *Id.* at 783. "If the defendant is a corporation, the plaintiff must allege facts that support a strong inference of scienter with respect to at least one authorized agent of the corporation, since corporate liability derives from the actions of its agents." *Teachers' Ret. Sys. of LA v. Hunter*, 477 F.3d 162, 184 (4th Cir.2007).

The Court "must evaluate the totality of the circumstances alleged in the complaint, and afford 'the inferential weight warranted by context and common sense.'" *Genworth*, 103 F.Supp.3d at 783 (quoting *Carlucci*, 907 F.Supp.2d at 729). This Court has found that the following factors, taken together, are sufficiently probative of scienter: (1) that a defendant's allegedly fraudulent conduct involved "core operations" of the business; (2) defendants' positions and level of personal involvement within the company; (3) statements regarding compliance; and (4) motive and opportunity of corporate officers. *See Genworth*, 103 F.Supp.3d at 783–87.

In *Genworth*, the court concluded that it is "relevant to the Court's holistic analysis" whether the alleged fraud dealt with "core operations" of the business, because high-ranking officers presumably know facts about the core operations of the company. *Id.* at 784. Here, the parties dispute whether Lumber Liquidators' operations in China, where the alleged regulatory violations occurred, constitute "core operations" of the business. Plaintiffs allege in their Complaint that Chinese-made flooring was a "key product" comprising Lumber Liquidators' core operations because Chinese imports drove the company's margins. ECF No. 90; Compl. ¶¶ 346, 347. At this stage, this Court must assume all well-pled facts to be true. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation mark omitted).

Regardless of whether Chinese imports constitute "core operations" in the technical sense, Defendants' repeated public discussion of Lumber Liquidators' Chinese operations is relevant to their state of mind. Plaintiffs allege that Defendants made several public statements about the importance of their Chinese operations and its singular impact on the company's overall growth. Compl. ¶¶ 164, 181, 184, 188, 191, 198, 200, 204, 201, 217, 223, 258, 267, 275, 279, 285, 314. Lumber Liquidators hired two of the named individual defendants, Mr. Lynch and Mr. Schlegel, for the purpose of "alter[ing] ... 'sourcing initiatives' in order to increase reported gross

margin." ECF No. 90. To accomplish this, Mr. Lynch and Mr. Schlegel were directly involved in importing from China, which Defendants credited as "the key driver of the Company's success." *Id.* These allegations suggest the importance of Lumber Liquidators' operations in China, and, in turn, support the inference that Defendants were aware of the alleged regulatory violations that were occurring in China as well.

The second factor examines whether Defendants held executive positions within the company and were "intimately involved" in the operations at issue. *Genworth,* 103 F.Supp.3d at 784. "Although various courts before have rejected claims that defendants must have known a statement was false or misleading solely because of his or her position in the company, . . . this claim may still be 'posited as part of the context to support the particulars of scienter set forth in the other allegations of the [Complaint].'" *Id.* (quoting *Arnlund v. Deloitte & Touche LLP,* 199 F.Supp.2d 461, 477 (E.D.Va.2002)). In this case, the individual defendants held high-level executive positions within Lumber Liquidators and, according to the Complaint, Defendants stated repeatedly that they were personally involved in Lumber Liquidators' Chinese operations. Compl. ¶¶ 54–59, 123, 245, 337, 340, 341. *See Genworth,* 103 F.Supp.3d at 785 (finding that "the Court may reasonably infer that Defendants possessed knowledge of the true state of affairs of the . . . business, and thus had knowledge that their representations were misleading," based on the defendants' "self-proclaimed personal involvement" in the business affairs at issue).

The third factor calls for consideration of Defendants' statements about their compliance and review polices. *Id.* 103 F.Supp.3d at 785. As referenced above,

Plaintiffs allege that "Defendants publicly boasted that they personally inspected the mills' sourcing practices and that the Company tested the wood from each mill to ensure quality and legal compliance." ECF No. 90; Compl. ¶¶ 54–59. Defendants stated, "[w]e have personnel on the ground, in the mills . . . we don't rely on a distributor to measure and control our quality . . . we do stringent testing of our products at multiple levels, beyond what's required." Compl. ¶¶ 58, 256. These strong representations of the "breadth and depth" of Defendants' review of Lumber Liquidators' operations support the inference that Defendants knew, or should have known, about the alleged regulatory violations occurring in their Chinese mills. *See Genworth,* 103 F.Supp.3d at 785.

The Court may also consider allegations of Defendants' motive and opportunity to inflate the price of the company's stock in determining whether Plaintiffs have established a strong inference of scienter. *Id.* (finding that the defendants' personal monetary benefits were "relevant and meaningful in considering the totality of the circumstances"). The Complaint alleges that the compensation for Mr. Lynch and Mr. Schlegel was tied directly to the company's improvements in gross margin and operating income, and that they profited significantly during the Class Period. Compl. ¶¶ 331–32, 334. The named individual defendants also sold the majority of their stock holdings in the company during the Class Period, when stock prices were at their highest value. Compl. ¶¶ 321–25. *See Teachers' Ret. Sys. of LA v. Hunter,* 477 F.3d 162, 184 (4th Cir.2007) (holding that "if the timing and amount of a defendant's trading were unusual or suspicious," it will support a strong inference of scienter).

Defendants cite *In re Winn–Dixie Stores, Inc. Sec. Litig.,* 531 F.Supp.2d 1334

(M.D.Fla.2007), which held that "it is not enough to make conclusory allegations that Defendants had *access* to the 'true facts' in order to demonstrate scienter, particularly when the complaint fails to allege which defendant knew what, how they knew it, or when." *Id.* at 1350 (emphasis added). However, Defendants' allegations here are not conclusory. The Complaint alleges, with particularity, that Defendants Lynch and Schlegel conducted "line reviews" in China, and that Mr. Schlegel and other executives toured the illegal operations at the Xingjia plant, which was Lumber Liquidators' primary supplier in China. Compl. ¶¶ 47, 48, 51, 55, 97–111. Such allegations demonstrate "which defendant knew what, how they knew it, and when." *In re Winn–Dixie*, 531 F.Supp.2d at 1350.

Mr. Schlegel's knowledge can be imputed to Defendants because he was acting as an agent of the company, and he "acted with the required state of mind, *i.e.* made a false or misleading statement of material fact with scienter." *In re Computer Sciences Corp. Sec. Litig.*, 890 F.Supp.2d 650, 664 (E.D.Va.2012) (citing *Teachers' Ret.*, 477 F.3d at 184). The Complaint adequately alleges that Mr. Schlegel knew about the Company's allegedly illegal sourcing practices, based on interviews with Chinese suppliers, confidential witness accounts, and other circumstantial evidence.[5] Plaintiffs contend that Schlegel never mentioned the potential for, or existence of, regulatory violations despite his participation in conference calls touting the success of the operations in China. Compl. ¶ 56. Plaintiffs have sufficiently alleged that Defendants "knew facts or had access to information suggesting [that their] public statements were not accurate" regarding the deficiencies in product quality. *Carlucci*, 907 F.Supp.2d at 729.

*(iii) Loss Causation*

■ Plaintiffs' Complaint describes a specific set of "corrective events" that allegedly revealed Defendants' fraudulent activity over time. Plaintiffs list the "Zhou post,"[6] an investigation conducted by the United States government, the "Tilson presentation,"[7] the second quarter earnings announcement of 2014, and a national television broadcast report as "partial corrective disclosures" of Defendants' allegedly fraudulent activity. ECF No. 90. Plaintiffs contend that, taken together, these events revealed Defendants' fraudulent activity, and were followed by an immediate decline in Lumber Liquidators' stock prices. *Id.*

■ To establish loss causation, a plaintiff must show that the "defendant's misrepresentation was a substantial cause of the loss by showing a direct or proximate relationship between the loss and the misrepresentation." *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 387 (4th Cir.2005). A plaintiff need not show conclusively that the defendant's fraud was the "sole cause" of the plaintiff's loss. *In re Mut. Funds Inv. Litig.*, 566 F.3d 111,

---

**5.** Mr. Schlegel was the "Chief Merchant" for Lumber Liquidators. He was hired because of his "extensive experience importing in China." Compl. ¶¶ 53, 54, 105. As Chief Merchant, he allegedly traveled to China frequently, "dug in with the vendors," and "spearheaded" the professional line review process and other initiatives in China. Compl. ¶¶ 55, 245.

**6.** On June 20, 2013, Xuhua Zhou posted a report on an investment website (SeekingAlpha.com), reporting that samples of Lumber Liquidators' wood products emitted formaldehyde at a level that exceeded CARB standards. ECF No. 83

**7.** On November 22, 2013, Whitney Tilson, a hedge fund manager, gave a presentation opining that Lumber Liquidators' stock was overvalued. ECF No. 83.

128 (4th Cir.2009). Loss causation is "most critical at the proof stage," and is usually determined by the trier of fact. *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 427 n. 4 (3d Cir.2007).

To plead loss causation based on partial corrective disclosures adequately, a plaintiff must allege that each disclosure revealed "new facts" to the market. *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 473 (4th Cir.2011). Defendants' assertion that each disclosure must reveal the entire scope of the alleged fraudulent scheme is wrong. ECF No. 120.[8]

This Court recognizes that a plaintiff may plead loss causation "on the theory that the truth was gradually revealed to the market over time." *Epstein v. World Acceptance Corp.*, No. 6:14CV1606, 2015 WL 2365701, at *7 (D.S.C. May 18, 2015) (citing *Katyle*, 637 F.3d at 471–73 ("neither a single complete disclosure or a fact-for-fact disclosure of the relevant truth to the market is a necessary prerequisite to establishing loss causation, though either may be sufficient")).

█ With respect to loss causation, "[s]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *Carlucci*, 907 F.Supp.2d at 724 (internal quotations omitted). This Court concludes that, taken together, the "Zhou post," the federal investigation, the "Tilson presentation," the

second quarter earnings announcement of 2014, and the national television broadcast report all revealed the widespread scope of Defendants' allegedly fraudulent scheme of covering up regulatory violations in order to inflate stock prices. Immediately following these disclosures, the stock prices declined, resulting in Plaintiffs' loss. This Court finds that Plaintiffs adequately pled the loss causation in their Complaint.

## B. "Control Person Claim;" § 20(a) of the Securities Exchange Act

### (i) Pertaining to Defendants Lynch, Terrell, and Sullivan

"On a motion to dismiss, a Section 20(a) claim will ... stand or fall based on the court's decision regarding the Section 10(b) claim." *Genworth*, 103 F.Supp.3d at 791; *see also Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 192 (4th Cir.2009). Because the Court has found that Plaintiffs have adequately pled that a primary violation exists under § 10(b), Plaintiffs' claim under § 20(a) stands as well. *See Genworth*, 103 F.Supp.3d at 790–91.

### (ii) Pertaining to Defendant Schlegel

█ Mr. Schlegel argues that Plaintiffs have failed to allege adequately that he had the ability to "control" any of the alleged violators. According to Mr. Schlegel, the Complaint fails to allege that he had any control over the persons who made the allegedly false and misleading

---

**8.** Defendants cite *Metzler Inv.GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049 (9th Cir. 2008) and *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462 (4th Cir.2011) in support of this proposition. In *Metzler*, the court found a lack of loss causation because *neither* of the alleged disclosures revealed the widespread nature of the defendants' fraudulent scheme. *Id.* at 1063. However, Defendants misconstrue this authority as supporting the proposi-

tion that *each* alleged disclosure, on its own, must reveal the widespread nature of the defendants' fraudulent scheme. In *Katyle*, the court merely stated that the partial disclosure must reveal the "fraudulent nature" of the specific conduct at issue. *Id.* at 473. The court did not determine whether a each partial disclosure must reveal the widespread nature of the fraudulent scheme.

statements. ECF No. 118. Mr. Schlegel also argues that the Complaint fails to allege that he exercised any control over the general affairs of Lumber Liquidators, or the corporate policies at issue concerning the company's internal control and financial reporting policies. *Id.* Mr. Schlegel further argues that Plaintiffs' § 20(a) claim against him is based solely on his corporate officer status, which is insufficient to maintain a claim for § 20(a) liability. *Id.*

This Court finds that the Complaint adequately pleads that Mr. Schlegel exercised control over Lumber Liquidators, which was one of the primary violators of § 10(b). Regarding the "general affairs" of Lumber Liquidators, Mr. Schlegel was involved in the day-to-day business of the company by virtue of his senior position and his direct involvement in the sourcing activities in China. ECF No. 124.

Mr. Schlegel argues that he lacked the power to control the general affairs of the company because he did not own a controlling share of stock, and lacked a position that gave him access to the operations of the company as a whole. ECF No. 118. However, stock ownership is only one factor in determining whether a defendant had the potential power to control a company's general affairs. *In re Corning, Inc. Sec. Litig.,* 349 F.Supp.2d 698, 722 (S.D.N.Y.2004) (finding that the existence of a special relationship, such as agency or stock ownership, can establish whether a defendant had the power to control the company's general affairs). Furthermore, courts routinely find that "control person liability" is pled adequately where the defendant has responsibility over an area of the company where the underlying fraudulent conduct occurred. *Kyung Cho v. UCBH Holdings, Inc.,* 890 F.Supp.2d 1190, 1205 (N.D.Cal.2012); *Latham v. Matthews,* 662 F.Supp.2d 441, 470 (D.S.C.2009); *Hut-*

*tenstine v. Mast,* No. 4:05CV152F(3), 2006 WL 3771096, at *7–8 (E.D.N.C. Dec. 21, 2006);

The Complaint also provides sufficient factual support to suggest that Mr. Schlegel exercised control over the specific policies underlying the alleged violations of § 10(b). The particular policies at issue dealt with Lumber Liquidators' sourcing practices from Chinese suppliers. As the Chief Merchandising Officer, Mr. Schlegel allegedly implemented the company's sourcing initiatives and managed the worldwide supply chain. ECF No. 124; Compl. ¶¶ 38, 54–59. The Complaint provides sufficient factual support of Plaintiffs' contention that Lumber Liquidators' allegedly illegal sourcing scheme was controlled by Mr. Schlegel (and Mr. Lynch, who was the CEO at the time). Compl. ¶¶ 54–59. The Complaint alleges that Mr. Schlegel drafted, reviewed, and disseminated the allegedly false and misleading statements issued by Lumber Liquidators, and that he was present when other executives made the alleged misrepresentations to investors about the company's sourcing initiatives in China. Compl. ¶¶ 38, 245, 255. The Complaint also describes the nature of Mr. Schegel's position as CMO and adequately alleges that he controlled Lumber Liquidators' operations in China, where the alleged regulatory violations occurred. ECF No. 124.

Plaintiffs have pled sufficient "control" on the part of Mr. Schlegel, given the nature of his top-level executive position and his direct involvement in Lumber Liquidators' sourcing activities in China. The Court also finds that assigning "control person liability" to Mr. Schlegel is consistent with the purpose of § 20(a). In determining the existence of "control person liability," the Court must ensure that a "corporate officer [is] not rewarded if he or she had the ability to

stop wrongful conduct, but instead turned a blind eye." *Latham*, 662 F.Supp.2d at 469.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 82) is **DE-NIED.** Defendants' Motion for an Order Directing Plaintiffs to Publicly File the July 21, 2015 Ex Parte Submission (ECF No. 115),[9] Plaintiffs' Motion for Partial Modification of the PLSRA Discovery Stay (ECF No. 132), and Plaintiffs' Amended Motion for Leave to File Notice of Recent Authority in Further Support of Opposition to Defendants' Motion to Dismiss (ECF No. 134) are **MOOT.**

The Clerk is **REQUESTED** to forward a copy of this Order to all parties.

**IT IS SO ORDERED.**

---

**9.** The Court did not consider Plaintiffs' July 21, 2015 *ex parte* submission in its decision regarding Defendants' Motion to Dismiss.